Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400
Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> SHAWN RICHARD CHRISTY, <br><br> Defendant. | Case No. 3:11-cr-00068-TMB-DMS <br><br> **SHAWN CHRISTY'S** <br> **SENTENCING MEMORANDUM** |

Defendant, Shawn Richard Christy, by and through counsel Mary C. Geddes, Assistant Federal Defender, files this memorandum in advance of a hearing on December 14, 2011. At the hearing, Mr. Christy intends to plead guilty to a violation of 47 USC section §223(a)(1)(D).[1] The parties seek sentencing in the same proceeding, consistent with the terms of a written plea agreement filed with this court on November 23, 2011.

---

[1] Carrying a maximum penalty of two years' incarceration or five years' probation, that federal offense punishes anyone who, calling interstate, "makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number."

*Background*

Mr. Christy's plea is the result of a lengthy negotiation with the federal and Alaska state governments.[2] In brief, Mr. Christy has been promised (1) no additional[3] confinement beyond the day of sentencing and (2) no other federal or state charges will be filed as long as he complies with probation conditions in this case. Mr. Christy agrees that he will be sentenced to a five-year term of federal probation, which is the statutory maximum term. Under 18 USC section 3563, the defendant will be subject to both mandatory[4] and discretionary (also referred to as special) conditions of probation.

The plea agreement between the parties reflects Shawn Christy's stipulation to several additional discretionary conditions. These include his agreements: to provide a DNA sample (not otherwise required of a probationer under 42 USC § 14135a) and to submit to searches upon reasonable suspicion of a violation of his probation. Other conditions prohibit his travel to and presence in Alaska, limit any contacts regarding legal matters in Alaska to writing,[5] drastically curtail any use of computers, and require his participation in mental health treatment.

---

[2]Dkt. 51: cover sheet, pages 5 and 5, para. 14.

[3]Awaiting the resolution of this case, Mr. Christy been detained by the federal authorities since August 18, 2011, a period of four months. This is Mr. Christy's first time in jail.

[4]Mandatory conditions require that Mr. Christy not commit another Federal, State, or local crime during the term of probation; that he not unlawfully possess or use a controlled substance; that he one drug test within 15 days of release on probation and at least 2 periodic drug tests, that he pay the $100 special assessment imposed, and that he notify the court of any material change in the defendant's economic circumstances affecting his ability to pay court costs, any fine or restitution

[5]Mr. Christy is not limited in his contacts with his federal court public defender.

Recognizing that a district court has the discretion to reject the parties' agreement, Mr. Christy nevertheless urges its acceptance because the agreement provides for a fair resolution for all concerned. The Sentencing Reform Act (18 United States Code section 3553) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with [its] purposes." A probationary sentence is sufficient and appropriate for a youthful offender like Mr. Christy (he has just turned twenty) who has no prior criminal history, and whose substantial needs for correction, education and treatment can be most effectively-addressed through the requirements of federal supervision. If Mr. Christy cannot comply with probation conditions, this court will regain the authority to sentence him to incarceration for up to the two-year maximum term.

*Restitution*

In light of the victim's request for restitution, this court has requested briefing from the parties regarding its authority to so order.

Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority. United States v. Follet, 269 F.3d 996, 998 (9th Cir.2001) (citing United States v. Hicks, 997 F.2d 594, 600 (9th Cir.1993)).

An order of restitution for this offense is not authorized under the Mandatory Victims Restitution Act (MVRA) or the Victim Witness Protection Act (VWPA).[6] See 18 USC section 3663, 3663A, and 3664. Those statutes require either mandatory or discretionary restitution as a separate component of a sentence. However, a district court may nevertheless decide to impose a restitution obligation as a discretionary condition of probation when restitution would not be otherwise

---

[6] The revised Presentence Report erroneously stated that this is a mandatory-restitution case.

available under the crime-specific provisions of section 3663(a) or 3663A (C)(1)(A)). United States v. Batson, 608 F.3d 630, 633-634 (9th Cir. 2010).

Section 3563(b) ("Conditions of probation") describes under what *limited* circumstances restitution (or other possible discretionary conditions) might be approved by a court:

> to the extent that such conditions are reasonably related to the factors set forth in section 3553 (a)(1)[("the nature and circumstances of the offense and the history and characteristics of the defendant")] and (a)(2)[("the need for the sentence imposed")] and *to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553 (a)(2)[("the need for the sentence imposed")]*.

18 USC section 3562(b). Section 3663, in its turn, provides the methodology by which restitution is determined. However, the imposition of discretionary restitution under section 3663 is clearly subject to the limitation stated above.

In determining whether restitution is "reasonably necessary" given the particular conduct involved and the circumstances of the defendant, this court will consider the defendant's ability to pay. According to the presentence report writer, "[b]ased upon the defendant's limited employment history [para. 78-79] and lack of assets [para. 80-82], it is assessed that he does not have the ability to pay a fine." PSR, para. 83. The same analysis applies to restitution.

This court is not required to make express findings on Mr. Christy's resources and earning ability, but it could nevertheless, based upon uncontroverted facts set out in the Presentence Report. His financial resources are non-existent. Prior to his arrest, Shawn Christy was living with his parents. He owns no house or other type of residential property. He has no car or any other type of motorized vehicle. Prior to his arrest he had $900 in cash, but his mother has had to use his

savings to pay household bills. Back in August he also had $900 in credit card debt but he expects that the credit card balances are larger now.

As for his demonstrated earning capacity, Shawn's formal job history is limited to two positions.[7] When he was 18 years old, he obtained a position sorting recycling material and sometimes driving a forklift. This position lasted for five months before the position was eliminated. Seven months later, after he turned 19, he found a new job. He packed boxes and was paid $10.80/hour. Shawn reports that this was a very good job, but he was let go at the end of his four-month probationary period. [8]

From this record, the undersigned counsel has extrapolated that Mr. Christy's earnings in 2010 were approximately $5000. His 2009 earnings, also estimated by counsel, were approximately $10,000. These are earnings below the poverty line and they demonstrate his inability to pay either a fine or restitution, in addition to supporting himself. According to US Census figures, the median annual income for a male full-time, year-round worker in 2010 was $47,715. According to the Census Bureau, the poverty level in the United States for a single person under the age of 65 was $11,344 was 2010.[9]

---

[7]Shawn says he has been able to obtain odd jobs such as mowing lawns here and there since his mid-teens.

[8]Even though he had no reprimands during his probationary period, Shawn lost his job on April 18, 2011, after national news organization reported that former Alaska governor and Sarah Palin had sought a new protective order against him. See e.g., http://articles.nydailynews.com/2011-04-14/gossip/29449058_1_mat-su-valley-s-frontiersman-gop-vice-presidential-candidate-frontiersman-newspaper.

[9]Source: "Soaring Poverty Casts Spotlight on 'Lost Decade,'" New York Times, Sabrina Tavernise, published September 13, 2011.

Do Shawn's future prospects suggest an improved ability to make restitution? In a word, no. This court knows how significantly education enhances earnings potential.[10] Shawn Christy has never had any formal education and is considered "unschooled," according to his examining neuropsychologist. Another factor allowing for some prediction of future income is parental income[11] and socio-economic status. The basic assumption is that most children follow in the socio-economic footsteps of those around him or her.[12] As this court is aware, Craig Christy has been unable to work for several years because of a medical condition; Shawn's mother has been unable to find work.

Shawn's own cognitive deficits (detailed in a neuropsychologist's evaluation submitted under seal) must also be considered relevant to determining his ability to make restitution. The neuropsychologist who evaluated him recommends that Shawn should be immediately referred for vocational rehabilitative services in Pennsylvania; she opines that Shawn will be eligible for such services due to his brain impairment and that he could benefit from having a job "coach." Her prescription for vocational services strongly indicates her view that Shawn has some additional hurdles to overcome and that he will have greater difficulty than most people in obtaining and maintaining employment without such assistance.

---

[10]. See, e.g., "The Causal Effect of Education on Earnings," 1999 article by Professor David Card, UC Berkeley, (davidcard.berkeley.edu/papers/causal_educ_earnings.pdf).

[11] See, e.g. "Predicting the Adult Earning Capacity of Minors," by Faizal Sharma, a Canadian economist. This article was published in the Spring 1997 issue of The Expert Witness, and in Economica, spring 1997, and is available online.

[12] See Edmond Provder, Using Vocational Experts in Cases Involving Injured Children, 29 Trial 39, 39–40 (1993).

While today's economic climate presents challenges for any person who seeking employment, a 20 year old with no formal education, little work history, cognitive issues, and a new felony conviction will have the greatest difficulty of all in finding a job and in earning enough money to support himself.

While "indigence and a present inability to pay do not preclude imposition of restitution," United States v. Miguel, 49 F.3d 505, 511 (9th Cir. 1995), a restitution order must be based on "some evidence the defendant may be able to pay the amount fixed when required to do so." United States v. Ramilo, 986 F.2d 333, 335 (9th Cir.1993). "A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally." United States v. Bailey, 975 F.2d 1028, 1032 (4th Cir.1992), cited in United States. v. Van Alstyne, 584 F.3d 803, 821 (9th Cr. 2009).

In light of the foregoing, this court should ultimately decide against a restitution condition of probation, even if the government is able to establish actual losses were caused by Shawn Christy's offense of conviction.[13]

---

[13] This counsel was informed by co-defendant's counsel that this court sought briefing on the matter of the victim's demand for restitution in the amount of $15,010. The entirety of the information submitted to the defendants is the following submission:

*Lost hours (approximation)*

*LH: 10 hours @ $160/hour = $1600*

*JT: 36 hours @ $200/hour = $7200*

*MR: 22 hours @ $155/hour = $3410*

*LJ: 12.5 hours @ $200/hour = $2500*

*MP: 1 hour @ $300/hour = $300*

Defendants' counsel requested additional explanation/documentation of the alleged loss, but have been told that there is none.

## *Information to Be Considered For Sentencing*

In sentencing any criminal defendant, this court considers the applicable advisory United States Sentencing Guideline sentencing range. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir.) (en banc), cert. denied, 553 U.S. 1061 [128 S.Ct. 2491, 171 L.Ed.2d 780] (2008). The "range must be calculated correctly," as the Guidelines are "the starting point and the initial benchmark." Id. (quotations and citations omitted). "[F]ailing to calculate (or improperly calculating) the Guidelines range" constitutes "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586 (2007).

The parties agree that the advisory Guideline range has been correctly calculated. However, "[t]he district court may not presume that the Guidelines range is reasonable." *Carty*, 520 F.3d at 991. Instead, the court must determine what sentence will be sufficient - but not greater than necessary – to achieve the sentencing goals Congress established through the Fair Sentencing Act,, 18 U.S.C. § 3553(a). Post-*Booker*, sentencing is an individualized determination. In accord with 18 U.S.C. §3553(a), the Guidelines, formerly mandatory, now merely serve as one factor among several that courts must consider in determining an appropriate sentence. *United States v. Booker*, 543 U.S. 220, 259-60, 125 S.Ct. 738 (2005).

Section 3553(a) considerations include the alternatives to incarceration, including a sentence of probation. A court, "determining whether to impose a term of probation...shall consider the factors set forth in section 3553 (a) to the extent that they are applicable." 18 USC § 3562 (Imposition of a sentence of probation). Accordingly this court looks at the nature and circumstances of the offense, the history and characteristics of the offender, and the purposes to be served by the sentence.

Shawn Christy's offense did not involve any physical contact. And the conduct was not random: it was related to the 19 year-old's preoccupation with what he believed had been a unfairly- prejudicial representation in his state civil case.[14] But certainly, his words were disturbing, offensive and unjustified. Shawn's conduct is best explained by reference to the evaluation prepared by Dr. Kristi Fuller, a local neuropsychologist. Dr. Fuller also listened to many of the telephone calls made by Shawn Christy and his dad. Her report is appended to the Presentence Report. Her testing of Shawn found very significant deficits on measures of attention, problem solving and abstract reasoning and executive functioning. Dr. Fuller believes that Shawn's "cognitive deficits have contributed substantially to his problematic conduct," and that he should be referred to a cognitive behavioral therapist for a course of treatment. She also recommends further evaluation by a psychiatrist for the purpose of determining if medication is indicated. Dr. Fuller indicated that it is possible that Shawn's brain dysfunction is associated with his Lyme disease "with neurological sequelae." (Patients with late-stage Lyme disease present a variety of neurological and psychiatric problems, including cognitive losses, seizure disorders, anxiety and impulse dyscontrol.) Dr. Fuller also notes that Shawn's illness at age 10, which included seizure activity, could have also compromised his brain functioning.

---

[14]In a state court proceeding, Sarah Palin's submission to the Superior Court, seeking a long term protective order against Mr. Christy, stated that "Respondent's obsession with Petitioner continues." Among the examples given were "a death threat postmarked 'Southeastern PA.' It appears that this area is about 60-80 miles from Respondent's hometown. It also appears that Petitioner sends letters from places other than his hometown." 3AN-11-1112-CIV. Publicity followed, of course, Mr. Christy's employment ended, and he became absolutely undone at the clear inference that he had sent this letter. Mr. Christy became obsessed with vindicating himself, and on obtaining a copy of the letter. Ms. Palin's attorneys told him they had turned it over to the FBI.

*United States v. Shawn Richard Christy*
Case No. 3:11-cr-00068-TMB-DMS  Page 9

It is notable that, despite some considerable economic, education and social challenges, Shawn lacks any other juvenile or adult criminal history. It is also notable that Shawn has been cooperative in all of his contacts with law enforcement in this case.

Given his lack of past criminality, a felony conviction coupled with many conditions of a five year probation sentence provide a sufficient sanction, and will sufficiently protect the victim and the public from any future misconduct. Probation is the just disposition for a defendant who needs training, medical care, and treatment; probation meets those needs in the most effective manner.

DATED this 9th day of December, 2011.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on December 9, 2011, a copy of the
foregoing document, was
served electronically on:

Retta-Rae Randall, Esq.

/s/ Mary C. Geddes